# In the United States Court of Federal Claims

No. 22-90C
(Filed: July 25, 2023)

```
* * * * * * * * * * * * * * * *
                               *
CHRISTOPHER J. RADZIEWICZ,     *
                               *
            Plaintiff,         *
                               *
      v.                       *
                               *
UNITED STATES,                 *
                               *
            Defendant.         *
                               *
* * * * * * * * * * * * * * * *
```

*William Emil Cassara*, William E. Cassara, P.C., Georgia, for plaintiff.

*Eric John Singley*, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for defendant.

## OPINION

**FUTEY**, Senior Judge.

This case concerns an Air Force reservist who was passed over for promotion and ultimately discharged from the military after being disciplined for sexual misconduct. After his discharge, plaintiff unsuccessfully petitioned the Air Force Board of Corrections for Military Records (Board of Corrections), seeking to have his records expunged and his candidacy for promotion reconsidered. Plaintiff's complaint alleges that the Board of Corrections denied his petition arbitrarily, capriciously, and without substantial evidence. Plaintiff requests the Court to award both backpay and equitable relief from the Board's actions.[1] Currently

---

[1] Also pending is plaintiff's cross-motion to supplement the administrative record. *See* Pl.'s Resp., ECF No. 11, at 1–2; Pl.'s Notice, ECF No. 17, at 1. The Court considered none of these proposed additional documents in this ruling. Moreover, as discussed below, the Court is transferring a portion of this case to a district court. As a result, this Court **DENIES** without prejudice the plaintiff's cross-motion as moot. If he so chooses, plaintiff may refile a new version of this cross-motion before the district court.

before the Court is the government's motion to dismiss the case for failure to state a claim.

The matter is now ripe for disposition.

## I.    BACKGROUND

### a. Factual Background

Plaintiff Christopher J. Radziewicz was a major in the U.S. Air Force Reserve, who commanded the 512th Memorial Affairs Squadron from September 2015 to October 2017.  Compl., ECF No. 1, ¶¶ 3, 6, 21; Def.'s Mot. to Dismiss (Def.'s Mot.), ECF No. 6, at 3–4.

In May 2017, the Air Force Office of Special Investigations began looking into various accusations against Radziewicz, concerning sexual misconduct that supposedly occurred in 2016 and 2017.[2]  Compl., ¶¶ 13–16, 30; Def.'s Mot., at 4–5. Radziewicz chose to undergo an Article 15 hearing on these accusations, rather than demand a court martial.  Compl., ¶¶ 33–34; Def.'s Mot., at 4.  On April 14, 2018, the commander leading the Article 15 proceedings found Radziewicz guilty of all charges.  *See* Compl., ¶ 34; Def.'s Mot., at 5.  Although Radziewicz timely appealed this decision a week later, his appeal was not forwarded until January 18, 2019. Compl., ¶ 34; Def.'s Mot., at 5–6.  On April 16, 2019, the appeal authority upheld the hearing's decision.  Compl., ¶ 34; Def.'s Mot., at 6.

Even before the Article 15 hearing occurred, a "do not promote" letter allegedly was placed in Radziewicz's file and nonjudicial punishment imposed. Compl., ¶¶ 29, 32; Pl.'s Resp., at 3.  An Air Force rater also putatively downgraded Radziewicz's Officer Performance Report, once prior to the hearing—purportedly because of an overdue fitness assessment—and a second time afterwards due the results of the hearing.  *See* Compl., ¶ 21; Pl.'s Resp., at 4; Def.'s Mot., at 6.  While Radziewicz's appeal of the hearing was pending, he twice was passed over for promotion to lieutenant colonel.  Compl., ¶ 37.  Radziewicz was separated from the Air Force because of his two-time non-promotion on September 1, 2020.  Compl., ¶ 38; Pl.'s Resp., at 4; Def.'s Mot., at 6.

On January 7, 2020, Radziewicz timely petitioned the Air Force Board of Corrections for Military Records, asking the Board to remove the Article 15 decision and the two Officer Performance Reports from his records and order his

---

[2] Two enlisted women in Radziewicz's squadron accused him, among other things, of showing them a photograph of his genitalia, touching one of their breasts during a massage, and soliciting them for intercourse or masturbation.  Compl., ¶¶ 7, 13, 16, 18, 22, 25, 30.  Radziewicz maintains that these accusations were retaliation for the role he played, as their commanding officer, in preventing the promotion of one of the two women.  *Id.*, ¶¶ 10–11, 19.

reconsideration for promotion. *See* Compl., ¶¶ 40, 44; Pl.'s Resp., at 7; Def.'s Mot., at 6–7. The Board of Corrections denied the petition on February 10, 2021, allegedly copying from the Air Force's advisory opinion without addressing most of the issues raised by Radziewicz. Compl., ¶ 40; Pl.'s Resp., at 4; Def.'s Mot., at 6–7.

### b.  Procedural Background

Having exhausted administrative remedies, Radziewicz sued in this Court on January 31, 2022, challenging the Board of Corrections' action as arbitrary, capricious, contrary to law, and unsupported by substantial evidence. Compl., ¶ 44; Def.'s Mot., at 19. Plaintiff maintains that this Court has jurisdiction under the Military Pay Act: a money-mandating statute. Compl., ¶ 2. He seeks all appropriate relief, including both money damages such as backpay, costs, and fees and an injunction that invalidates the Board of Corrections' proceedings, removes the Article 15 decision and performance reports from his file, and orders a reconsideration for promotion. Compl., at 10; Pl.'s Resp., at 4.

The government has asked the Court to dismiss this case, arguing that plaintiff has failed to state a claim because the Military Pay Act only guarantees to reservists on inactive status pay for duties that they actually performed. Def.'s Mot., at 11–12. As Radziewicz never alleges that he performed any duties that went unpaid, he arguably has not stated a claim for backpay. In the alternative, the government contends that plaintiff's claim is nonjusticiable because it requires the Court review discretionary military decisions such as promotions. Def.'s Mot., at 14–15. Lastly, if plaintiff has stated a claim, the government seeks judgment on the administrative record that the Board of Corrections' action was not arbitrary and capricious. Def.'s Mot., at 19. In turn, plaintiff asks that—if the Court does conclude that he failed to state a monetary claim under the Military Pay Act—the Court transfer his remaining non-monetary claims to a district court. Pl.'s Resp., at 6. The government concedes that a district court would have jurisdiction under the Administrative Procedure Act over plaintiff's non-monetary claims. Def.'s Reply, ECF No. 16, at 5–6.

## II.      DISCUSSION

### a.  Legal Standards

#### i.  Failure to State a Claim, RCFC 12(b)(6)

Under the Rules of the United States Court of Federal Claims (RCFC), this Court must dismiss complaints that fail to state a claim on which the Court can grant relief. *See* RCFC 12(b)(6). Notably, "[w]hen considering a motion to dismiss a case for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court accepts all well-pled facts as true and draws all reasonable inferences in plaintiff's favor." *Silver Buckle Mines, Inc. v. United States*, 117 Fed. Cl. 786, 791 (2014) (citations omitted); *see also Leatherman v. Tarrant Cnty.*

*Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, (1993); *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). Granting a motion to dismiss a case for failure to state a claim "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Nonetheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level," containing something more than "a statement of facts that merely creates a suspicion." *Twombly*, 550 U.S. at 570.

## ii. Judgment on the Administrative Record, RCFC 51.1(c)

Once a plaintiff has sought relief from a military corrections board, the board's determination binds plaintiff unless he can demonstrate that the decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations. *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004); *Koretsky v. United States*, 57 Fed. Cl. 154, 158 (2003). A board's decision is arbitrary and capricious "if the board fails to consider an important aspect of a problem, offers an explanation for its decision that runs counter to the evidence before the board, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Royal v. United States*, 160 Fed. Cl. 630, 632–33 (2022). "When reviewing the decisions of the [reviewing board] under the arbitrary and capricious standard, the scope of review is extremely narrow." *Champagne v. United States*, 35 Fed. Cl. 198, 208 (1996) (citing *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285 (1974)).

This standard of review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983). The Court does not serve as a "super correction board." *Skinner v. United States*, 219 Ct. Cl. 322, 327 (1979). "When reasonable minds could reach differing conclusions in the same instance, the court will not substitute its own judgment for that of the military board." *Pope v. United States*, 16 Cl. Ct. 637, 641 (1989). Under this standard, the Court's review is limited to the administrative record before the board. *See Wyatt v. United States*, 23 Cl. Ct. 314, 319 (1991).

### iii.  Transfer of Claims, 28 U.S.C. § 1631

The transfer statute, 28 U.S.C. § 1631, authorizes courts, upon finding a "want of jurisdiction," to cure by transferring cases to a court where the action "could have been brought" as long as such a transfer "is in the interest of justice." *See Hicks v. United States*, 23 Cl. Ct. 647, 652 (1991).  The legislative history of the statute clarifies that § 1631 "authorize[s] the court in which a case is improperly filed to transfer it to a court where subject matter jurisdiction is proper." *See* S. Rep. No. 97–275, at 30 (1981), 1982 U.S.C.C.A.N. 11.  The underlying purpose of the statute is to enable courts to transfer a case to an appropriate forum if the case has been brought in the wrong jurisdiction.  *McGuire v. United States*, 707 F.3d 1351, 1357 (Fed. Cir. 2013).

Transfer is appropriate when three conditions are met: (1) the transferor court lacks subject matter jurisdiction; (2) the case could have been filed in the transferee court; and (3) transfer is in the interest of justice.  *Jackson v. United States*, 162 Fed. Cl. 282, 291 (2022); *see also Fisherman's Harvest, Inc. v. PBS & J*, 490 F.3d 1371, 1374 (Fed. Cir. 2007) ("The statute requires the transferor court to determine both that it lacks jurisdiction and that the transferee court possesses jurisdiction.").  "Whether a case should be transferred to a district court lies within the sound discretion of the [transferring] court," as long as the jurisdictional requirements are met.  *Busby Sch. of N. Cheyenne Tribe v. United States*, 8 Cl. Ct. 588, 595 (1985).  Courts may transfer less than all of the claims in a civil action. *See United States v. Cnty. of Cook*, 170 F.3d 1084, 1089 (Fed. Cir. 1999).  The transfer analysis applies on a claim-by-claim basis, so a court may transfer some claims and decline to transfer others.  *Jackson*, 162 Fed. Cl. at 291.

### b.  Analysis

### i.  Plaintiff's Monetary Claim

The Tucker Act grants the Court of Federal Claims subject matter jurisdiction over any monetary claim against the United States "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1). The Tucker Act is only a jurisdictional statute and does not create any substantive rights for money damages.  *See, e.g.*, *United States v. Mitchell*, 463 U.S. 206, 216, (1983); *United States v. Testan*, 424 U.S. 392, 398 (1976).  Instead, plaintiffs must ground their claim for money damages in a money-mandating source of substantive law.  *See, e.g.*, *McCord v. United States*, 943 F.3d 1354, 1358–59 (Fed. Cir. 2019); *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1309 (Fed. Cir. 2008).

The Military Pay Act long has served as just such a money-mandating statute. *See, e.g.*, *Dysart v. United States*, 369 F.3d 1303, 1315 (Fed. Cir. 2004); *Martinez v.*

*United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003).  Due to the interaction between the Military Pay Act and the Tucker Act, military reservists can find themselves "without recourse" for wrongful treatment, "when a service member on regular active duty would have such recourse if similarly treated." *Palmer v. United States*, 168 F.3d 1310, 1314–15 (Fed. Cir. 1999).[3]

The Military Pay Act entitles "a member of a reserve component of a uniformed service" to compensation for "period[s] of appropriate duty, at which the member is engaged for at least two hours," for "the performance of such other equivalent training," and for duties that the reservist "is unable to perform because of physical disability." 37 U.S.C. §§ 206(a).  Unless they are injured, that is, reservists on inactive status cannot receive backpay for any duties that they did not actually perform.  Repeatedly, courts have dismissed cases for failure to state a claim when some wrongful action by federal government allegedly prevented the reservist from performing a duty.  *See, e.g.*, *Palmer*, 168 F.3d at 1312–13 (no claim for backpay stated when reservist wrongfully transferred and Board of Corrections "improperly" refused to reinstate); *Kuntz v. United States*, 141 Fed. Cl. 713, 717 (2019) (no claim stated when reservist on inactive duty wrongfully court martialed); *Nieves v. United States*, 133 Fed. Cl. 306, 311 (2017) (no claim for backpay stated even though board ordered reservist's reinstatement and corrected records).  Thus, "in the absence of [a reservist] actually having performed duties for which the Government is obligated to pay, there is no debt for which the Government is liable." *Palmer*, 168 F.3d at 1313.  In contrast, active duty servicemen are entitled to the pay and allowances attributable to their rank and station, even if the government stops them from performing their duties.  *See* 37 U.S.C. § 204(a)(1); *Palmer*, 168 F.3d at 1313–14.  Therefore, regardless of whether the arbitrary and capricious action of various government officials kept Radziewicz from performing the duties of a reservist on inactive status, he has not stated a claim.

Radziewicz—aware of this problem with his suit—characterizes himself as "on active duty during the relevant period when the investigation began." Pl.'s Resp., at 5.  Reservists are able to state a claim for backpay if they were participating in full-time active duties until the government's wrongly action. *See Groves v. United States*, 47 F.3d 1140, 1142, 1145 (Fed. Cir. 1995) (claim stated because reservist had returned to "constructive active duty with an indefinite service obligation" prior to wrongfully discharge); *see also Reilly v. United States*, 93 Fed. Cl. 643, 648 (2010) (explaining that the Military Pay Act "applies to reserve officers, such as plaintiff, only when they are removed while on active duty"); 37 U.S.C. § 204(a)(2).  Under the constructive service doctrine, "military personnel who have been illegally or improperly separated from service are deemed to have continued in active service until their legal separation." *Christian v. United States*, 337 F.3d 1338, 1347 (Fed. Cir. 2003).  A few temporary duty assignments, however, are insufficient for

---

[3] This anomaly perhaps violates the basic tenet of the rule of law that like cases be treated alike.  But that criticism must be directed at the legislature, not this Court.

constructive service.  *See Barnick v. United States*, 591 F.3d 1372, 1379 (Fed. Cir. 2010) (holding that a reservist who "had only been on temporary active duty assignments" and "was on inactive status at the time of the improper action" was not constructively active).

Unfortunately for Radziewicz, the facts that he has alleged do not establish a nonfrivolous claim of active status.  According to Radziewicz, in addition to the normal periodic training of an inactive reservist ("One Weekend a Month, Two Weeks of Year," to quote the slogan), he also "served 146 days of active duty from 2016–2017, 318 days of active duty from 2015–16, and 285 days of active duty from 2014–2015."  Pl.'s Resp., at 3.  Indeed, "[f]rom 30 May to 30 June 2017, he was serving on Active-Duty Operational Support orders" when investigation of the accusations against him commenced on May 31, 2017.  *Id.*  Radziewicz alleges that "it was understood that he would return to active-duty order" based on "past precedent" even after his orders ended on June 30, 2017.  *Id.*  Radziewicz refers to what he "expected" and "anticipated."  *Id.*  at 4, 6.

Lacking from Radziewicz's allegations is any suggestion that he was on active duty—real or constructive—at the time of the putatively improper government actions.  It was not improper for the Air Force Office of Special Investigations merely to open an investigation.  The Office could hardly respond to the serious accusations against Radziewicz, made barely a week before on May 20, 2017, in any other way.  *See* Compl., ¶ 14.  And no formal discipline was directed at Radziewicz until March 13, 2018: almost a year after his active duty orders had finished.  *See* Compl., ¶ 29; Pl.'s Resp., at 3.  Radziewicz was inactive when the supposedly improper actions occurred.

The only disciplinary action that happened during Radziewicz's active duty orders was the June 3, 2017 downgrading of Radziewicz's Officer Performance Report to a referral, purportedly because of an overdue fitness assessment.  *See* Compl., ¶ 21; Pl.'s Resp., at 4.  Radziewicz admits that he was overdue for the assessment and that his commanding officer had the discretion to discipline him for this.  *See* Compl., ¶ 21; Pl.'s Resp., at 23–24.  This first performance report never mentioned the sexual misconduct accusations, and even Radziewicz acknowledges that—except for the fitness issue—it was "otherwise unproblematic."  *Id.* at 23.  But Radziewicz asserts that his downgrading was malicious prosecution caused by the accusations, because "six other officer and senior non-commissioned officers were also non-current for their fitness assessments but did not receive referred evaluations."  *Id.* at 24.

Radziewicz's allegations concerning the fitness assessment are the very sort of speculation and conclusory statements that the Supreme Court has found insufficient to state a claim.  *See Iqbal*, 556 U.S. at 662; *Twombly*, 550 U.S. at 570.  Radziewicz hazards that he was treated differently due to the accusations.  But the commander may have chosen not to downgrade other officers for any number of

discretionary reasons.  Non-enforcement choices are the archetype of a decision committed to agency discretion by law.  *See Apple Inc. v. Vidal*, 63 F.4th 1, 15 (Fed. Cir. 2023).  And even if Radziewicz's downgrade were somehow improperly motivated, his allegations give no reason to believe that he would have been granted another active duty order if not for the bad fitness report.  *See Antonellis v. United States*, 723 F.3d 1328, 1329, 1336 (Fed. Cir. 2013) (no claim stated as no standard existed for reviewing military's decision not to assign reservist to pay billet).  Indeed, Radziewicz was not abruptly separated from active service.  The Air Force allowed Radziewicz to complete his active duty orders in June 2017, even though he received the negative Officer Performance Report nearly a month before his active duty term ended.  *See* Compl., ¶ 21; Pl.'s Resp., at 3.

Radziewicz has failed to successfully state a monetary claim upon which relief can be granted.  Under binding precedent, reservists cannot state a claim for backpay over duties they did not actually perform (with a few exceptions not relevant to this case).  The Court, therefore, **GRANTS** defendant's motion to dismiss Radziewicz's claim for backpay.

### ii.  Plaintiff's Requested Transfer of Remaining Claims

Both parties agree that, with Radziewicz's monetary claim under the Military Pay Act dismissed, his equitable claims under the Administrative Procedure Act do not fall within the subject matter jurisdiction of this Court.  *See* Pl.'s Resp., at 6–7; Def.'s Reply, at 5–6; *see also* 28 U.S.C. § 1491(a)(1).  As a result, plaintiff requests that the Court transfer his surviving non-monetary claims to a district court.  Pl.'s Resp., at 6.  This Court "shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . .  in which the action or appeal could have been brought" whenever the Court "finds that there is a want of jurisdiction."  28 U.S.C. § 1631.

The government acknowledges—as it must—that a district court would have subject matter jurisdiction to review the Air Force Board of Corrections' decisions and provide equitable relief under the Administrative Procedure Act.  Def.'s Reply, at 5–6; *see also Albino v. United States*, 104 Fed. Cl. 801, 818 (2012) ("Decisions of boards for correction of military records are subject to review under the APA. . . . Therefore, a district court could adjudicate plaintiff's [equitable] claim.").  But the government insists that transferring this case is not "in the interest of justice" because of "Radziewicz's failure to demonstrate error in the [Board of Corrections'] decision."  Def.'s Reply, at 6.  According to defendant, Radziewicz's complaint is nonjusticiable and, even if it were justiciable, the Board's actions were not arbitrary and capricious.  Def.'s Mot., at 1–2.  Thus, the government opposes a transfer as futile.  *See* Def.'s Reply, at 6.

Under 28 U.S.C. § 1631, this Court can only transfer a case to cure a want of jurisdiction when this transfer is "in the interests of justice."  *See Ace Prop. &*

*Casualty Ins. Co. v. United States*, 60 Fed. Cl. 175, 187 (2004), *aff'd*, 138 Fed. App'x 308 (Fed. Cir. 2005). The Federal Circuit has construed the phrase "in the interest of justice" to mean that the transferred claim is nonfrivolous and capable of being decided on the merits. *Galloway Farms, Inc. v. United States*, 834 F.2d 998, 1000 (Fed. Cir. 1987); *see also Jackson v. United States*, 162 Fed. Cl. 282, 291, 305 (2022). As long as Radziewicz's non-monetary claims are not futile, they should be transferred because "transfers of actions filed in good faith generally are viewed as minimizing transaction costs and expediting review, thereby furthering the interests of justice." *Reilly v. United States*, 93 Fed. Cl. 643, 653 (2010).

Under this standard used in the Federal Circuit, Radziewicz's non-monetary claims ought to be transferred, as they are nonfrivolous and capable of being decided on the merits. This Court cannot foretell if Radziewicz will win his case, but he has offered colorable arguments for his positions.

The government argues that Radziewicz's complaint is inherently nonjusticiable because there is no standard by which the Court can review the Board of Corrections' decision. *See* Def.'s Mot., at 14–15. But "not every claim arising from a military decision presents a nonjusticiable controversy." *Adkins v. United States*, 68 F.3d at 1317, 1323 (Fed. Cir. 1995). "[A]lthough the *merits* of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy." *Id.* (emphasis in original); *see also Murphy v. United States*, 993 F.2d 871, 873 (Fed. Cir. 1993) ("A court may appropriately decide whether the military followed procedures because by their nature the procedures limit the military's discretion."). In cases of improper discharge, courts "may test the validity of a discharge only in terms of its legal sufficiency and not in terms of the military wisdom in discharging one of its members." *Rogers v. United States*, 24 Cl. Ct. 676, 690 (1991) (cleaned up).

Contrary to what the government asserts, plaintiff is not asking a federal court "to review the merits of his commander's findings of guilt" through "a collateral attack on this Article 15 nonjudicial punishment." Def.'s Mot., at 16; Def.'s Reply, at 7. Radziewicz requests "one basic form[] of [non-monetary] relief in his complaint: invalidation of [the Board of Corrections'] proceeding." Pl.'s Resp., at 6–7; *see also* Compl., at 10. That is, Radziewicz seeks to have a court vacate the Board of Corrections' prior decision and remand to the Board for a reconsideration of his January 7, 2020 petition. In this petition, plaintiff asked the Board to remove the Article 15 and Officer Performance Reports from his records and order his reevaluation for promotion based on these corrected records. *See* Compl., ¶¶ 40, 44; Pl.'s Resp., at 7; Def.'s Mot., at 6–7. A district court cannot on its own authority correct Radziewicz's records or command the Air Force to promote him. But nonetheless a court can grant some relief. Relief is possible because a federal court can review the procedures that the Board of Corrections used and can require the Board to answer Radziewicz's petition anew.

Moreover, the government misunderstands Radziewicz's complaint. According to the complaint, the Board of Corrections "failed to address most of the issues raised by Mr. Radziewicz" and instead simply copied the language of the Air Force's advisory opinion. Compl. ¶ 40; *see also* Pl.'s Resp., at 14. Thus, when the complaint lists objections to the investigation of the accusations against him, to the Article 15 hearing, and to the other disciplinary actions, plaintiff is not asking the court to review all those actions. Plaintiff is summarizing the arguments made in his January 7, 2020 petition which the Board of Corrections allegedly ignored. *See* Administrative Record (AR), ECF No. 5, at 13–15. The Board's denial of plaintiff's January 7, 2020 petition—not the investigation, the Article 15 hearing, or so forth—is the agency action at issue in this case. And the Board's denial presents a justiciable controversy.

Indeed, as the government itself confesses, federal courts review decisions of the Board of the Corrections both procedurally and under the APA's arbitrary and capricious standard. Def.'s Reply, at 5–6; *see also Fisherman's Harvest*, 490 F.3d at 1374; *Albino*, 104 Fed. Cl. at 818. "Once a plaintiff has sought relief from a military correction board, the board's determination binds plaintiff unless he can demonstrate that the decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations." *Royal v. United States*, 160 Fed. Cl. 630, 632 (2022) (citations omitted); *see also Miller v. United States*, 119 Fed. Cl. 717, 726, 731 (2015). Moreover, "a board's decision is arbitrary and capricious if the board fails to consider an important aspect of a problem, offers an explanation for its decision that runs counter to the evidence before the board, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Royal*, 160 Fed. Cl. at 632–33 (cleaned up). The Federal Circuit, for instance, has found a military corrections board's action arbitrary and capricious when it adopted a prior opinion without evaluating evidence on its own and failed to analyze contradictory evidence. *See Chisolm v. United States*, 41 F. App'x 394, 402 (Fed. Cir. 2002); *see also* Draper v. United States, 163 Fed. Cl. 284, 290 (2022) ("Where a corrections board fails to address contradictory evidence . . . or fails to expressly analyze evidence altogether, the board's decision may be arbitrary and capricious.").

In this case, Radziewicz has presented a colorable argument that the Board of Corrections behaved arbitrarily and capriciously. In January 2020, Radziewicz submitted a brief in support of his petition for the correction of his records, detailing a variety of procedural and evidentiary concerns about his disciplining. *See* AR, at 10–19. Examples include allegations that the Air Force applied the wrong legal standard, ignored inconsistencies and factual impossibilities, and never attempted to gather corroborating evidence. Plaintiff also attached several dozen exhibits to his brief, in support of these claims. *Id.*, at 20–197. Later during the proceedings before the Board, he filed a response to the Air Force's Advisory Opinion to the Board, setting out various putative problems with the Advisory Opinion's reasoning. *Id.*, at 587–93.

- 10 -

Nevertheless, when the Board of Corrections on February 10, 2021 issued its recommendations against correcting records, it provided almost no analysis of Radziewicz's arguments. Close to the entirety of the recommendation merely describes the contents of Radziewicz's filings and the Air Force's Advisory Opinion. *Id.*, at 1–4. The recommendation's short "findings and conclusions" concentrate on Radziewicz's procedural arguments. *Id.*, at 5. Insofar as it addressed plaintiff's evidentiary arguments at all, the recommendation only states that "the evidence did not demonstrate material error or injustice" so that the Board "concludes the applicant is not the victim of an error or injustice." *Id.* The Board "concur[red] with the rationale and recommendation of [the Air Force's Advisory Opinion] and finds a preponderance of the evidence does not substantiate the applicant's contentions." *Id.*

A district court may hold that the Board of Corrections' cursory analysis was arbitrary, capricious, unsupported by substantial evidence, or otherwise not in accordance with law. *See* 5 U.S.C. § 706. In its decision, the Board never indicates if it considered important aspects of the problem, such as the evidentiary objections that Radziewicz raised. *See Royal*, 160 Fed. Cl. at 632–33. The Board's recommendation colorably constitutes the sort of "naked conclusion and mere recitation that the opinion is based upon all of the evidence without an analysis of the evidence in writing" that the binding precedent holds "is inimical to a rational system of administrative determination and ultimately inadequate." *Beckham v. United States*, 183 Ct. Cl. 628, 636 (1968). Plaintiff has presented a nonfrivolous case that the Board—by adopting the position of the Air Force's Advisory Opinion without comment—abdicated its duty to review. If a district court is convinced by plaintiff's arguments, the court can vacate the Board's February 10, 2021 denial and remand to the agency.

This Court, therefore, holds that transferring Radziewicz's non-monetary claims to a district court is in the interest of justice. Because the Court has dismissed his claim for backpay, it lacks jurisdiction over Radziewicz's non-monetary claims—jurisdiction that a district court would possess. Although plaintiff does not request transfer to any particular court, venue in the United States District Court for the District of Delaware is proper, because plaintiff resides in Delaware and a substantial part of the events giving rise to the claim occurred there. *See* Compl., ¶¶ 3, 5–6; 28 U.S.C. § 1391(e)(1).

The Court, thus, **GRANTS** plaintiff's request to transfer his non-monetary claims to a district court. The Clerk is directed to transfer these claims, pursuant to 28 U.S.C. § 1631 (1994), to the United States District Court for the District of Delaware.

## III.    CONCLUSION

For the above stated reasons, the following is hereby ordered:

1. Defendant's motion to dismiss plaintiff's monetary claims for failure to state a claim is **GRANTED**.

2. Plaintiff's request to transfer the remaining non-monetary claims to a district court is **GRANTED**.  The claim shall be transferred to the United States District Court for the District of Delaware.

3. Plaintiff's cross-motion to supplement the administrative record is **DENIED** without prejudice.

The Clerk is directed to enter judgment accordingly.    No costs.

It is so **ORDERED.**

s/ Bohdan A. Futey
**Bohdan A. Futey**
**Senior Judge**